**LEONARD, Plaintiff-Appellant, v GLENN CARTAGE CO.,
Defendant-Appellee.**

Ohio Appeals, Seventh District, Mahoning County.

No. 3063.   Decided November 13th, 1945.

Williams, Stanley & Andrews, Youngstown, for plaintiff-appellant.

L. B. Davenport, Cleveland, and Comus M. Beard, Youngstown, for defendant-appellee.

## OPINION

By PHILLIPS, J.

Defendant is an Ohio corporation engaged in the operation of a system of tractor trailer outfits for the carrying of freight for hire in Ohio and other states, and on October 17, 1941, was the owner of a P. U. C. permit issued by the State of Ohio.

On that date James Murdock was the owner of a tractor trailer outfit, but did not hold a P. U. C. O. permit. Prior to that date Murdock entered into a verbal arrangement with defendant corporation to haul freight for it exclusively on a "load to load" basis as he chose under its P. U. C. O. permit, the number of which was painted on his tractor. By the terms of that arrangement the parties agreed that defendant should operate and maintain his truck "in a good state of repair" at his own expense and receive seventy-five percent of the gross amount of freight charges received by defendant corporation on freight hauled by him.

The undisputed evidence submitted to us for review reveals that about 4:30 P. M. on October 17, 1941, an officer of defendant corporation refused Murdock permission "to load" because "he appeared to me (him) he was drinking", and in response to Murdock's question as to why he was not loading responded "one look at you, you could see why you were not loading"; that in the next couple of hours Murdock had "a couple of beers" at Girard, Ohio, the main office of defendant corporation; that about 6:00 o'clock on that day he started for his home at Atwater, Ohio, where he intended to put a distributor and "maybe a set of spark plugs" on his tractor on which "he always had something to do", which he did when he was home, and which repairs were needed "before the accident"; that he intended to remain at home over night and report at the office of defendant corporation the next day; that enroute to his home he had a "couple more beers" at two different places; that about 8:00 o'clock P. M. of the same day the plaintiff was sitting in an automobile headed in a westerly direction and parked on the northerly side of Route 18 at a point thereon approximately 800 feet west of its intersection with Ohio State Route 45 at the center of North Jackson in Mahoning County, Ohio, when Murdock operated his tractor in a westerly direction on Route 18 into collision with the automobile in which plaintiff was sitting.

Subsequently plaintiff sued defendant in the court of common pleas to recover damages for personal injuries sustained as a result of such collision, and in her petition alleged "that said truck was being transported on said highway at all times to which reference is heretofore made in furtherance and carrying out of the purpose of the agreement and arrangement hereinbefore specifically set forth".

In that action a jury returnd a verdict in favor of defendant upon which the trial judge duly entered judgment. From that judgment plaintiff appealed to this court on questions of law and contends that the trial judge erred to her prejudice in the respects stated hereinafter herein.

Counsel for plaintiff urged in oral argument and contend by brief that:—

"Every transportation company operating under a P. U. C. permit in the State of Ohio is liable for damage caused by the negligence of an owner-trucker who operates under the permit of the transportation company. The basis of the liability is agency predicated upon joint venture with the same

burden as is imposed under the doctrine of Respondant Superior.

"If the admitted facts of the arrangement between the transportation company and the owner-trucker are not in dispute the relationship between them as to the injured third parties is a matter of law for the Court and not a question of fact for the Jury.

"If the undisputed facts, as a matter of law, spell joint venture, then the only inquiry left open is Was the owner-trucker at the time of the accident doing anything in carrying out the joint venture? If, in the operation of the truck by the truck-owner at the time of the accident, was on a mission in the slightest degree in the carrying out of the joint venture, although an incidental purpose was also incident to the mission, the transportation company is liable. If, however, the mission of the owner-trucker at the time of the accident had no connection whatever in any degree with the joint venture, then the transportation company would not be liable." (Sic)

Plaintiff requested the trial judge to charge the jury in writing before argument the following propositions of law numbered 2, 3, 4 and 5 which read respectively as follows:

Request No. 2.

"It appears without contradiction in this case that the Glenn Cartage Company was engaged in interstate commerce as a common carrier by motor vehicle, and as such held a certificate as a motor transportation company granted to it by the Public Utilities Commission of Ohio.

"It further appears by the uncontradicted evidence in the case that the defendant, the Glenn Cartage Company, by arrangement between the Glenn Cartage Company and one James Murdock the said James Murdock was permitted to transport freight for the Glenn Cartage Company over the public highways under such permit granted to the Glenn Cartage Company by the Public Utilities Commission of Ohio.

"The Court says to you as a matter of law that by reason of and because of such arrangement by the Glenn Cartage Company and James Murdock, the said Glenn Cartage Company would be liable to persons injured on the highway by the negligent acts of James Murdock while carrying out such arrangement or agreement, and while engaged in some phase of the performance of such arrangement or agreement."

Request No. 3.

"The Court says to you as a matter of law that under the

evidence the Glenn Cartage Company was to solicit hauling business, collect charges therefor, and do other things in connection with the hauling of merchandise. That one, James Murdock, was to furnish a truck, maintain it, and keep it in repair, provide the necessary oil and gasoline for it, and was to haul merchandise for and in behalf of the Glenn Cartage Company. That for such community of undertaking the Glenn Cartage Company was to receive 25% of the gross amount received for hauling and the said James Murdock was to receive 75%. The said James Murdock, in hauling said merchandise for the Glenn Cartage Company over the highways, did so under and by virtue of the permit granted to the Glenn Cartage Company by the Public Utilities Commission of the State of Ohio.

"The Court says to you as a matter of law that such an arrangement by the Glenn Cartage Company and James Murdock constituted what is sometimes called 'joint enterprise' or sometimes called a 'joint venture', and the Court further says to you as a matter of law that the Glenn Cartage Company would be responsible under the law for any damage directly and proximately caused through the negligence of the same James Murdock while engaged in carrying out any of the things by him to be kept and performed in the furtherance of said joint venture."

Request No. 4.

"The uncontradicted evidence in this case shows that one of the purposes of the said James Murdock was to make repairs upon said truck at his home, after the completion of the trip from Girard to his home, and before returning with the tractor for further hauling.

"The Court says to you as a matter of law, that since it is uncontradicted in this case that one of the purposes of taking the truck to the home of Murdock was to make such repairs, then the Glenn Cartage Company would be liable for the collision of the tractor with the automobile, if such collision was caused through want of ordinary care on the part of said James Murdock, and responsible for any damages to Mrs. Leonard directly and proximately resulting from such collision."

Request No. 5.

"The Court says to you as a matter of law, that if you find

by the preponderance of the evidence that one of the purposes of James Murdock's driving the tractor from Girard to his home was to make repairs thereon before returning the tractor to the plant of the defendant for further hauling, then I say to you as a matter of law that the driving of the truck on October 17th from Girard to the home of James Murdock was one of the things that came within the joint venture, and that for damages directly and proximately resulting from the want of ordinary care on the part of Murdock, the Glenn Cartage Company would be liable."

The trial judge refused to submit the quoted requests to charge before argument to the jury, which refusal plaintiff assigned as one of her grounds of error. As the result of careful study of such submitted requests to charge before argument it is believed that the trial judge did not err in refusing to submit them to the jury for the reason that this court believes and so holds that the evidence presented questions for the determination of the jury.

During argument of counsel, a part of which theretofore was not reported, the court said:—

"The Court: Mr. Reporter, you better note that you were not present during part of the argument of Mr. Davenport, but were called in to enable Mr. Williams to make an objection.

"Mr. Williams: Counsel for Defendant, in his argument to the jury, stated, in substance, that Murdock had been drinking the night of the accident and that after, at the time of the taking of his deposition, the reason that he stated he was going to repair the truck, some one suggested that to him. I object to that statement as being an argument not justified by the facts nor borne out by the record, and of prejudicial character, and I ask the Court, at this time, to instruct the jury to disregard it.

"Mr. Davenport: I didn't say that. I said he was in such condition that he couldn't remember anything that night, two and a half years later, when his deposition was taken, that he couldn't remember anything and that probably it was suggested by somebody else.

"Mr. Williams: I ask the Court to instruct the jury to disregard that statement.

"The Court: No, I shall not instruct the jury to disregard it, I shall leave it to the jury whether that is a fair assumption.

"Mr. Williams: Exception."

I concur in what the trial judge said in disposing of this assigned ground of error upon motion for a new trial that:—

"While the remarks in question do not meet with my approval, they certainly do not go to the extent involved in the cited case of **Jones v Banking Company, 132 Oh St 341,** and I do not think justify the granting of a new trial even in the absence of contemporary censure by me."

This court cannot reach the conclusion, at which counsel for plaintiff asks it to arrive, that the trial judge erred in refusing to grant her a new trial on the ground of misconduct of counsel.

In his general charge to the jury the trial judge said:—

"Now in considering and weighing the testimony of the witnesses, I instruct you that you are the sole judges of their credibility; I mean by that, you are the sole judges of the extent to which you will accept the testimony of any witness to be the truth. You may accept the testimony of any witness altogether as being entirely the truth, or you may reject the testimony of any witness altogether, or you may reject or accept a part. In other words, you may believe the testimony of a witness to the extent, and only to the extent, that you think the testimony given and the witness who gives it deserves such belief on your part."

As nearly as can be determined from the oral argument and the brief of counsel for the plaintiff they claim that:—

"The error and prejudice of this part of the charge lies in the jury being permitted to reject any part of the testimony of the officers of the defendant, which testimony might have been against the interest of the defendant and favorable to plaintiff or in permitting the jury to reject any part of Murdocks' testimony favorable to plaintiff.

"Murdock's testimony was uncontradicted. —That Murdock planned and intended to make repairs on the tractor while at his home at Atwater was, since in no way contradicted, binding. The jury could not reject it."

Considering all of the evidence in this case and determining the question under discussion as it is presented in this case only the conclusion is reached that whether James Mur—

dock was enroute to Atwater for the purpose, among others, of making repairs to his tractor presented a question for the determination of the jury in spite of his uncontradicted testimony that such was one of his purposes for going to Atwater, whose testimony together with that "of the officers of defendant" it could believe or disbelieve in whole or in part as its sound judgment dictated.

Counsel for plaintiff contend that "it was clearly prejudicial error to submit to the jury the question of whether or not the undenied but in detail admitted arrangement between the cartage company and Murdock was or was not a joint venture", and "complain bitterly that a jury of laymen were permitted to 'guess' as to whether the relationship of joint venture did exist", which question the trial judge submitted to the jury in the following language:—

"Fourth, that at the time of the happening of the event referred to there was what we call a joint adventure in existence between Murdock and the defendant."

"That issue has to do with whether or not you find upon the evidence that there was a joint adventure between Murdock and the defendant, The Glenn Cartage Company; in other words, I mean that the burden is upon the plaintiff to establish that there was a joint adventure between Murdock and the defendant."

"You will look to the evidence and determine whether or not the plaintiff has sustained the burden of proof that such a joint adventure was in existence at the time of the happenings of this case. Now if you find that the plaintiff has failed to establish the existence of such a joint adventure between the defendant and Murdock, by the greater weight of the evidence, then she would not be entitled to recover and your verdict would be for the defendant."

"Fifth, that at the time of the causing of the injuries Murdock was acting in pursuance of that joint adventure. Now these are the five things she must establish before she can get a verdict at your hands."

Counsel for plaintiff stated in oral argument that if the parties were not engaged in a joint adventure plaintiff couldn't recover.

In a case in which the facts were in some respects somewhat similar to those in the instant case the Supreme Court classified operators like Murdock for the purpose of that lawsuit as independent contractors, and said:—

"A motor truck operator who, under contract, furnishes his own motor truck, including its fueling and maintenance, to a freight distributing corporation to haul with such motor truck the trailers of such corporation from point to point as directed, and for which he is compensated according to the service rendered, determined either by the mileage covered or by the tonnage hauled, is an independent contractor, and, as such, is not within the coverage of the state Unemployment Compensation Act." **Commercial Motor Freight, Inc., Appellant, v Ebright, Treas., et al., Appellees, 143 Oh St 127.**

It is observed that in his charge the trial judge told the jury that if James Murdock was doing something intended by him to carry out the joint adventure between him and the defendant, by doing something reasonably necessary in the performance of his part of that joint venture, that that fact would be established and that the plaintiff would prevail upon that issue.

All of the evidence introduced in this case in the trial court and the law applicable thereto has been carefully considered and as a result thereof the conclusion is reached that the trial judge did not err in submitting to the jury the question whether "at the time of the happening of the event referred to there was what we call a joint venture in existence between Murdock and the defendant", or whether "at the time of the causing of the injuries Murdock was acting in pursuance of that joint venture."

Counsel for plaintiff further contend that "when the trial court left the question as to what Murdock was doing or what he was going to do, to the jury, as being 'reasonably necessary' he got himself 'out on a limb' "; that it "was none of the jury's business to speculate whether or not the making of these repairs were 'reasonably necessary' to the joint venture, or whether or not the making of these repairs at Atwater was reasonably necessary to the joint venture. —To permit the jury to so speculate was error of the worst kind and highly prejudicial to the plaintiff." And that under the following language of the trial judge "the jury were permitted to speculate as to whether the making of the repairs were 'reasonably necessary' ":—

"If you find in favor of the plaintiff, in accordance with the instructions I have already given you, both as to negligence, proximate cause and the existence of this joint adventure, you will then turn your attention to whether or not the

particular trip that Murdock was on during which this collision occurred, was or was not a part of that joint adventure, and, in giving consideration to that question, you will inquire as follows: Was Murdock, at the time of the collision, in the course of doing something for his own purposes, in his own behalf, on the one hand, or was he doing something intended by him to carry out the joint adventure between him and the defendant, by doing something reasonably necessary in the performance of his part of that joint adventure? You will look to the evidence to determine whether or not this particular trip that he was taking, during which this collision occurred, was or was not a part of the joint adventure, and, in order to determine it, you will determine, as I have explained to you, one of two things, whether or not, as I say, he was in the course of doing something for his own purpose and on his own behalf, at the time, or whether, on the other hand, he was doing something intended by him to be in the carrying out of the joint adventure by doing something reasonably necessary to the performance of his part, to be performed, under that joint adventure. Now you will look to the evidence, and bear in mind that the burden of proof is upon the plaintiff to establish that what he was doing at the time ——; of course, I don't mean the collision, but what he was doing at that time, in general, the trip he was taking, was a part of the joint adventure."

If the tractor of James Murdock was in condition to haul a load for defendant at 4:30 P. M. on the afternoon of October 17, 1941, to any destination it designated, as he apparently knew it was when he asked an officer of such corporation why "he was not loading", it is believed that at least it became a jury question as to whether the making of repairs, the nature of which are stated herein, to his tractor at Atwater later that night were "reasonable necessary" to be made at that time to further any purpose of any joint adventure, if any existed between the parties.

The record in this case has been carefully read and as a result thereof and viewing this case as we do this court cannot reach the unanimous conclusion that the verdict of the jury and judgment of the court entered thereon are "against the weight of the evidence and the correct conclusions to be reached from the uncontradicted facts", as urged by plaintiff.

The judgment of the trial court is affirmed.

NICHOLS, PJ, and CARTER, J., concur in judgment.